EERAERT, RESPONDENT, *v.* EUREKA LUMBER CO., AP-
PELLANT.

(No. 2,952.)

(Submitted September 18, 1911.  Decided October 3, 1911.)

[117 Pac. 1060.]

*Logging — Streams — Negligent Driving—Liability—Defenses—*
*Independent Contractors—Special Damages—Pleading—Evi-*
*dence—Inadmissibility.*

Pleadings—Amendment—Evidence—Admissibility of Original Pleading.
1. Where, in an action for damages to plaintiff's land, alleged to have
been occasioned by the negligence of defendant company in managing
a drive of logs, the original answer contained a paragraph admitting
the driving thereof, which pleading, however, was subsequently amended
by alleging that the logs were driven by another under a contract with
defendant, the reception in evidence of the paragraph prior to amend-

ment was harmless, the jury in the course of the trial having been fully informed as to the contract and the circumstances under which the logs were driven.

Logging—Streams—Negligent Driving—Liability—Independent Contractors.
  2.   The contention of defendant company that the person who had contracted to drive its logs was an independent contractor, and that, therefore, he, and not itself, was responsible for any damage caused by the logs becoming jammed and the consequent overflow of the stream, was without merit, it appearing that under the agreement the contractor was required to conduct the drive in a certain manner, defendant refusing to give him permission, during the drive, to do it in such a way as to avoid the flooding of adjacent lands.

Same—Special Damages—Pleading—Evidence—Inadmissibility.
  3.   Damages to plaintiff's lands, not flooded, claimed as incidental to those caused to property actually injured or destroyed by defendant's negligence, were special; they not having been pleaded, evidence that such lands had been lessened in value in a certain amount per acre, by reason of the injury to flooded land and the improvements thereon, was erroneously admitted.

*Appeal from District Court, Flathead County; J. E. Erickson, Judge.*

ACTION by Adolph Eeraert against the Eureka Lumber Company. Plaintiff had judgment, and defendant appeals from an order denying it a new trial. Judgment modified.

*Messrs. Noffsinger & Walschli* submitted a brief in behalf of Appellant. *Mr. Noffsinger* argued the cause orally.

A pleading which has been superseded by an amended one is not admissible in evidence, either for or against either party to the action. (*Mecham* v. *McKay*, 37 Cal. 154; *Ponce* v. *McElvy*, 51 Cal. 222; *Johnson* v. *Powers*, 65 Cal. 179, 3 Pac. 626; *Wheeler* v. *West*, 71 Cal. 126, 11 Pac. 871; *Osment* v. *McElrath*, 68 Cal. 466, 58 Am. Rep. 17, 9 Pac. 731; *Ralphs* v. *Hensler*, 114 Cal. 196, 45 Pac. 1062; *Miles* v. *Woodward*, 115 Cal. 108, 46 Pac. 1076, 1079; *Littlerock E. T. C. Ry. Co.* v. *Clark*, 58 Ark. 490, 25 S. W. 504; *Holland* v. *Rogers*, 33 Ark. 251; *Smith* v. *Davidson*, 41 Fed. 172.) This court held the rule to be that a party is bound only by the admissions in the pleadings upon which he goes to trial (*Mahoney* v. *Butte Hdw. Co.*, 19 Mont. 382, 48 Pac. 545); from

which it would seem to follow that, since the party is not bound by such admissions, they are not admissible in evidence.

Elements of special damage must be specially pleaded. (*Parker* v. *Bond,* 5 Mont. 1, 1 Pac. 209; *Root* v. *Railway Co.,* 20 Mont. 354, 356, 51 Pac. 155; *Watson* v. *Colusa-Parrot M. & S. Co.,* 31 Mont. 513, 519, 79 Pac. 14; *O'Brien* v. *Quinn,* 35 Mont. 441, 448, 90 Pac. 166; 31 Cyc. 109; Phillips on Code Pleading, sec. 425.) This is especially so in regard to damages growing out of permanent injury to real property. (*Chicago etc. Ry. Co.* v. *Emmert,* 53 Neb. 237, 68 Am. St. Rep. 602, 73 N. W. 540, 542; *Watson* v. *Colusa-Parrot etc. Min. Co., supra.*) The case of *Chicago etc. Ry. Co.* v. *Emmert, supra,* lays down the rule that damages for permanent injury to real estate, resulting from a flood, cannot be recovered unless specially pleaded, and where evidence as to such damages is admitted over an objection, the court must presume that prejudicial error resulted to the defendant, and a new trial should be granted.

Wilburn was an independent contractor. Under his contract he engaged to undertake an independent business, furnish his own assistants, and perform the work according to the plans prescribed in the contract, answering to the defendant only for the results, at an agreed price per M for the logs delivered. This constituted him an independent contractor. (*Carter* v. *Berlin Mills,* 58 N. H. 52, 42 Am. Rep. 572; *Moore* v. *Sanborne,* 2 Mich. 519, 59 Am. Dec. 209; *Overseers* v. *Pelton,* 129 Mich. 31, 87 N. W. 1029; *Town of Pierrepont* v. *Loveless,* 72 N. Y. 211, 215; *Gay* v. *Roanoke Lumber Co.,* 148 N. E. 336, 62 S. E. 436; *Young* v. *Lumber,* 147 N. C. 26, 60 S. E. 654, 656, 16 L. R. A., n. s., 255; *Easter* v. *Hall,* 12 Wash. 160, 40 Pac. 728.) These cases are in point, being log-driving or log-hauling cases. (See, also, *Jensen* v. *Barbour,* 15 Mont. 582, 39 Pac. 906; *Poor* v. *Madison River Power Co.,* 38 Mont. 341, 99 Pac. 974; *State* v. *Hughes,* 38 Mont. 468, 100 Pac. 610; *Campbell* v. *Jones,* 60 Wash. 265, 110 Pac. 1083; *Hackett* v. *Telegraph Co.,* 80 Wis. 187, 49 N. W. 822.) Where the relation is wholly defined by written instruments, and there is no dispute as to the facts, as in the case at bar, it was the

duty of the court to find and announce as a matter of law that Wilburn was an independent contractor. (*Anderson* v. *Tug River Coal Co.*, 59 W. Va. 301, 53 S. E. 713; *Gay* v. *Roanoke Lumber Co., supra; Young* v. *Lumber Co., supra; Green* v. *Soule*, 145 Cal. 96, 78 Pac. 337, 339; *Pearson* v. *Potter Co.*, 10 Cal. App. 245, 101 Pac. 681; *Vosbeck* v. *Kellogg*, 78 Minn. 176, 80 N. W. 957; *Aldritt* v. *Gillette Herzog Mfg. Co.*, 85 Minn. 206, 88 N. W. 741.)

Wilburn being an independent contractor and prosecuting an independent employment, it follows that defendant is not liable for any damages resulting from the negligent acts or omissions of Wilburn, for the rule is well established that an employer is not liable for the negligence of an independent contractor. (*Easter* v. *Hall*, 12 Wash. 160, 40 Pac. 728; *Knowlton* v. *Hoit*, 67 N. H. 155, 30 Atl. 346; *State* v. *Hughes*, 38 Mont. 468, 100 Pac. 610; *Houghton* v. *Lumber Co.*, 152 Cal. 500, 93 Pac. 82, 14 L. R. A., n. s., 913, 14 Ann. Cas. 1159; and logging cases, cited *supra*.)

Tobacco river is navigable stream and legally subject to proper driving. (Rev. Codes, sec. 1326; Gould on Waters, 3d ed., secs. 107, 109; 25 Cyc. 1566; *Brown* v. *Chadbourne*, 31 Me. 9, 50 Am. Dec. 641; *Moore* v. *Sanborne*, 2 Mich. 519, 59 Am. Dec. 208; *Carter* v. *Thurston*, 58 N. H. 104, 42 Am. Rep. 584.) To be deemed navigable for this purpose, it is sufficient that the stream have sufficient capacity to float logs at regularly recurring periods and seasons during the year, even though such periods be of a duration not to exceed a few weeks. (Rev. Codes, sec. 1326; 25 Cyc. 1566; Angell on Watercourses, secs. 535, 536; *Commissioners of Burke Co.* v. *Lumber Co.*, 116 N. C. 731, 47 Am. St. Rep. 829, 21 S. E. 941; *Shaw* v. *Oswego Iron Co.*, 10 Or. 371, 45 Am. Rep. 154; *Treat* v. *Lord*, 42 Maine, 552, 66 Am. Dec. 298; *Diedrich* v. *N. W. Ry. Co.*, 42 Wis. 248, 24 Am. Rep. 399; *Falls Mfg. Co.* v. *Oconto River Imp. Co.*, 87 Wis. 134, 58 N. W. 257.) The river being navigable and the log-driving industry being a lawful industry, plaintiff could only recover damages which resulted from negligent driving by defendant. (*Hopkins* v. *Butte Commercial Co.*, 13 Mont. 223, 40 Am. St. Rep. 438,

33 Pac. 817; *Gibson* v. *Kelly,* 15 Mont. 417, 39 Pac. 517; 25 Cyc. 1578.).

*Mr. Sidney M. Logan* and *Mr. Ernest M. Child,* for Respondent, submitted a brief. *Mr. Logan* argued the cause orally.

The following courts hold the original pleading, which has been superseded by an amended pleading, competent as to admissions therein: *Alabama Midland R. Co.* v. *Guilford,* 114 Ga. 627, 40 S. E. 794; *Mulligan* v. *Railway Co.,* 36 Iowa, 181, 14 Am. Rep. 514; *Raridan* v. *Railway Co.,* 69 Iowa, 527, 29 N. W. 599; *Wyles* v. *Berry,* 116 Ky. 377, 76 S. W. 126; *Vogel* v. *Osborne,* 32 Minn. 167, 20 N. W. 129; *Walser* v. *Wear,* 141 Mo. 443, 44 S. W. 928; *Woodworth* v. *Thompson,* 44 Neb. 311, 62 N. W. 450; *Sayre* v. *Mohney,* 35 Or. 141, 56 Pac. 526; *Barrett* v. *Featherstone,* 89 Tex. 567, 35 S. W. 11, 36 S. W. 245; *Kilpatrick Co.* v. *Box,* 13 Utah, 494, 45 Pac. 629; *Arnd* v. *Aylesworth,* 195 Iowa, 185, 123 N. W. 1000, 29 L. R. A., n. s., 638; also, *Boots* v. *Canine,* 94 Ind. 408. We believe the point has never been passed upon by this court.

Defendant's second specification of error is that plaintiff should not have been permitted to introduce evidence of the depreciation in value of the 150 acres or so of land not actually flooded, for the reason that there was no allegation of special damages to this portion of the land in the complaint. There was no error: (1) Because the evidence was admissible under allegations of general damage. "Damages which are probable and traceable to and necessarily result from an injury are termed 'general damages.'" (*North Point Consol. Irr. Co.* v. *Utah & S. L. Canal Co.,* 23 Utah, 199, 63 Pac. 812; *Jutte* v. *Hughes,* 67 N. W. 268, cited in *Herfort* v. *Cramer,* 7 Colo. 483, 4 Pac. 901; *Treadwell* v. *Whittier,* 80 Cal. 574, 13 Am. St. Rep. 175, 22 Pac. 266, 5 L. R. A. 498.) (2) The plaintiff's complaint contains an allegation that the effect of the injury was "to render the lands of the plaintiff untillable, unproductive and uninhabitable," and since the destruction of the bottom land had the effect, as the evidence discloses, of rendering the whole 160 less desirable as a residence and less inhabitable, it was competent to show under that allegation the depreciation in value of the land not destroyed by reason

of the fact that the whole ranch was less suitable as a place of residence. (*Peden* v. *Chicago R. I. Ry. Co.,* 78 Iowa, 131, 42 N. W. 625, 4 L. R. A. 401; *Wrought Iron Range Co.* v. *Graham,* 80 Fed. 474, 25 C. C. A. 570; *Marvin* v. *C. M. & St. P. Ry. Co.,* 79 Wis. 140, 47 N. W. 123, 11 L. R. A. 506; *Harvey* v. *Mason City & Fort Dodge Ry. Co.,* 129 Iowa, 465, 113 Am. St. Rep. 483, 105 N. W. 958, 3 L. R. A., n. s., 973.) (3) But in any event, if there was error, it was harmless. The reason for requiring the plaintiff to allege special damages is that the adverse party may know what evidence it must meet and rebut on the trial. It has suffered no harm in this case, as is shown by the fact that while the plaintiff introduced one witness as to the damage to the rest of the 160 acres, the defendant introduced the evidence of three witnesses upon this precise point.

MR. JUSTICE SMITH delivered the opinion of the court.

This action was begun to recover damages on account of the fact, as alleged in the complaint, that defendant had so carelessly and negligently driven certain logs down the Tobacco river, in Flathead county, through the lands of the plaintiff, as to damage and destroy such lands, together with certain buildings and personal property situated thereon. Plaintiff had a verdict and judgment for $1,416. Defendant appeals from an order denying a new trial.

1. By original answer, in paragraph 5, defendant admitted driving the logs, but afterward, by amendment, alleged that they were driven by one Wilburn under a contract between them. At the trial paragraph 5 of the original answer was received in evidence, over defendant's objection. We find no reversible [1] error in this; we regard the whole matter as immaterial in view of the fact that the jury was fully informed as to the contract and the circumstances under which the logs were driven.

2. The contract provided, among other things, as follows: "Wilburn agrees to drive all logs that may be put into the Tobacco river, from a point two miles above the place now occupied by what is known as the Van Wagenen dam, to the mill now

operated by the company at Eureka. Wilburn further agrees to keep the mill supplied at all times with logs if there shall be a sufficient amount of logs in the river to do so, or to bring to the mill an amount equal to whatever is put into the river by the company's wood crew and their contractor. In case there are too many logs in the river to bring all to the mill, then the company are to accept a solid jam at mill.''

It is contended that Wilburn was an independent contractor, and, therefore, that he alone, and not the defendant, was responsible for the damage caused by the logs. It appears from the testimony that the defendant company placed in the stream about 17,000,000 feet of logs and that these logs were ''packed solid'' in the river for a distance from eight to twelve miles above its mill. Plaintiff's property was situated about one and a half miles above the mill. The result of so crowding the river with logs was that they became jammed, and dammed up the stream in places, in consequence of which, when the jams, as the witnesses describe them, were broken, the water came down in such quantities as to cause a ''big flood'' and the logs were forced out of the stream over and upon the adjoining lands, including those of the plaintiff. It will be noted that the defendant company [2] had contracted with Wilburn to either bring all logs to the mill or maintain a solid jam there. When Wilburn requested of the president of the company permission to leave the channel open for a short distance in order to prevent flooding the adjacent lands, he met with a refusal. It is apparent, therefore, that it becomes immaterial to inquire whether Wilburn was technically an independent contractor; in a certain sense he was, but the damages sustained by the plaintiff were occasioned, not by any negligence on his part in managing the drive, but by reason of the negligence of the defendant in overloading the stream in order that the logs might be ''driven solid''; in other words, by the manner in which the work was necessarily conducted under the contract. There is really no substantial controversy on this point in the testimony. In this view of the case, the authorities cited by the appellant are not in point, as they all relate to specific acts

of negligence on the part of independent contractors. In arriving at the foregoing conclusion we have assumed—of which assumption defendant cannot complain—that the Tobacco river is a navigable stream. We think the foregoing disposes, in effect, of all other questions raised, save one.

3. Over defendant's objection the plaintiff was allowed to testify that certain lands, incidentally described in the complaint, but not flooded, had been lessened in value in the sum of two dollars per acre, by reason of the injury to flooded land and the improvements thereon. We think the objection interposed was sufficiently specific to raise the point made by the appellant and that the testimony was erroneously received. The complaint, after describing 160 acres of land of which plaintiff is alleged to be the owner, sets forth: "That the defendant * * * caused * * * a jam of logs to pile up and form a dam, thereby interrupting and obstructing the natural flow of the waters of said stream, and causing the same to overflow its banks, and to cover and inundate and flood the lands of plaintiff hereinbefore described, and to carry onto and cover the same with large quantities of saw-logs, sand and rubbish and debris; to tear down, wash away, cut out, erode and destroy the natural banks of said stream on the lands of plaintiff; to tear down, uproot and wash away the fruit and ornamental trees and vegetation of plaintiff growing on said land; to wash away and destroy the habitation, barns and other buildings of plaintiff on said land; to carry off, wash away and destroy large quantities of vegetables stored on said lands, and large quantities of household goods and furniture and farming implements, machinery and personal property of plaintiff; to wash away and destroy plaintiff's wagon bridge across said stream on said land; to tear, erode, wash and cut great gullies, ravines, seams and gashes in the soil of plaintiff's land, and causing the said stream to leave its natural channel, and to cut, tear and wash a new channel across the land of plaintiff, and to render the lands of plaintiff untillable, unproductive and uninhabitable, to destroy the private road of plaintiff across said land, and compelling plaintiff on account thereof, to build a new road at great annoyance, cost and expense." We find in the

foregoing no allegation which would tend to notify the defendant [3] that plaintiff would claim damages to lands not flooded, as incidental to those caused to property actually injured or destroyed. Plaintiff's counsel stated to the court at the time the testimony was offered, that "we would have to move away from the water." Such damages are special and should have been pleaded. (*O'Brien* v. *Quinn*, 35 Mont. 441, 90 Pac. 166.)

There is no necessity for a retrial of this cause unless respondent so elects. It is ordered that the order appealed from be affirmed, provided plaintiff shall, within ten days after *remittitur* received in the court below, agree to remit the sum of $300 from the judgment, as of date of its original entry; otherwise a new trial is ordered. Appellant to pay costs.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied November 3, 1911.