DOMITROVICH, ADMINISTRATOR, RESPONDENT, *v.* STONE & WEBSTER ENGINEERING CORPORATION, APPELLANT.

(No. 3,007.)

(Submitted September 22, 1911. Decided October 21, 1911.)

[118 Pac. 760.]

*Personal Injuries—Master and Servant—Evidence—Experts— Assumption of Risk—Safe Peace—Removal of Causes—Petition—When Too Late.*

Removal of Causes—Petition—When Too Late.
  1.  A petition and bond to remove a cause were too late, where the offer constituted an interruption of the statement of plaintiff's counsel to the court that plaintiff was ready for trial, but desired to reduce the amount claimed to $2,000, in response to the trial judge's inquiry as to whether the parties were ready.

Master and Servant—Personal Injuries—Death—Evidence—Admissibility.
  2.  In an action for injury to a construction laborer, caused by a dump-car overturning through a defect in the track, a witness, testifying how the accident occurred, could state that men repairing the track gave no signal to stop the car, even though such failure was not pleaded as negligence.

Same—Evidence—Admissibility.
  3.  Where a physician had testified that decedent, upon whom a car of rock had been overturned, had died from suppurative cholangitis, plaintiff was properly allowed to show that a weakening of tissues anywhere in the body furnishes a field for development of germs of that disease, and that after being injured one may go several days with no apparent trouble, until suppuration follows, *etc.*

Same—Evidence—Expert Opinions—Physical Condition—Admissibility.
  4.  In an action for negligent death, the opinion of a hospital superintendent, based on the records of the case in evidence, as to the character of decedent's ailment, was properly excluded; since witness had testified to the symptoms, the records spoke for themselves, and witness had not qualified as a physician.

Same—Assumption of Risk—Jury Question.

    5.  Whether a construction laborer, fatally injured by the overturning of a dump-car, caused by a defect in the track, assumed the risk, *held* under the evidence a jury question.

Same—Safe Place to Work—Employer's Duty.

    6.  A construction company's duty to make reasonably safe a track used in operating dump-cars to avoid injury to employees could not be delegated, so as to avoid liability for such injury.

Same—Death of Employee—Cause—Evidence—Sufficiency.

    7.  In an action for death of a construction laborer, caused by overturning of a car, evidence *held* to warrant a finding that the accident was caused, not by negligence of trackmen, but on account of the method of construction of the track.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by John Domitrovich, administrator, against the Stone & Webster Engineering Corporation. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Mr. E. C. Day, Mr. Wm. Wallace, Jr.,* and *Mr. John G. Brown,* submitted a brief for Appellant. *Mr. Day* argued the cause orally.

The court erred in denying the petition for a removal to the federal court, and in going ahead with the trial. We contended the cause was removable, then, for two reasons: (1) Because the amendment had not been asked for before their statement that they were ready for trial, and (2) because courts will not allow themselves to be made a party to a mere subterfuge to defeat a party of his right of removal. (*Berry* v. *Railway Co.,* 118 Fed. 911; *Golden* v. *Northern Pacific Ry. Co.,* 39 Mont. 435, 104 Pac. 549; *Powers* v. *Railway Co.,* 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673; *Remington* v. *Railway,* 198 U. S. 95, 25 Sup. Ct. 577, 4 L. Ed. 959; *Kansas City etc. Ry. Co.* v. *Herman,* 187 U. S. 63, 23 Sup. Ct. 24, 47 L. Ed. 76; *Whitcomb* v. *Smithson,* 175 U. S. 635, 20 Sup. Ct. 248, 44 L. Ed. 511; *Guarantee Co.* v. *Bank,* 80 Fed. 766, 26 C. C. A. 146.)

It has been expressly held to be error to allow an amendment simply to defeat federal jurisdiction. (*Knouse* v. *Martin,* 15

How. (U. S.) 198, 14 L. Ed. 660.) Plaintiff contended in the lower court, and will doubtless here contend, that the papers were not actually filed, when they were extended to, or laid upon the desk in front of, the clerk, as was done here. We assert that the papers were actually filed, first, because it is not required that the clerk shall actually indorse upon the papers "filed," to entitle them to be considered filed; it is sufficient for them to be delivered to the clerk. A paper is actually filed when it has been delivered to the proper officer, irrespective of whether or not it has been indorsed filed. The indorsement on the back of the paper is nothing more than evidence of what has been done; the filing is accomplished when the paper has been delivered to the proper officer. (*Beebe* v. *Morell,* 76 Mich. 114, 15 Am. St. Rep. 288, 42 N. W. 1119; *State* v. *Hockaday,* 98 Mo. 590, 12 S. W. 246; *Manhattan Co.* v. *Laimbeer,* 108 N. Y. 578, 15 N. E. 712; *In re Conant's Estate,* 43 Or. 530, 73 Pac. 1018; *Meridan National Bank* v. *Hoyt etc. Co.* 74 Miss. 221, 60 Am. St. Rep. 504, 21 South. 12, 36 L. R. A. 796; *In re Dewar's Estate,* 10 Mont. 442, 25 Pac. 1025; *McDonald* v. *Shreve,* 12 Mont. 82, 29 Pac. 729.) The second ground that we urge is, that under the circumstances of this case, and in light of the acts of the plaintiff, the petition was filed in time. That is to say, we urge that in light of the fact that this amendment was not made during any of the four months preceding the trial of this cause, and was not made until after counsel for the defendant had produced from his pocket the petition and bond for removal, the doubts should be construed against allowing it.

It must be apparent to the court that the joinder of the co-defendant, John Doe, was an attempted fraud upon the defendant's right to remove to the federal court, and therefore the petition having been offered for filing, should be ordered filed forthwith. (*Wecker* v. *Enamelling Co.,* 204 U. S. 176, 27 Sup. Ct. 184, 51 L. Ed. 430, 9 Ann. Cas. 757.)

Mr. Taft, when on the federal bench, held that a plaintiff might, from his very action, estop himself from raising the objection that removal was ill-timed. (*Powers* v. *Railway Co.,*

65 Fed. 129, affirmed in *Powers* v. *Railway Co.*, 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673; *Hukill* v. *Railway Co.*, 65 Fed. 138; see, also, *Dudley* v. *Railway Co.* (Ky.), 96 S. W. 835; *Crehove* v. *Railway*, 131 U. S. 240, 9 Sup. Ct. 692, 33 L. Ed. 144.)

The court erred in refusing to admit the testimony of the superintendent in charge of the hospital. "Evidence of the * * * physical condition of plaintiff both before and after the infliction of an injury * * * is admissible, as tending to prove the extent, nature and probable effects of the injury." (13 Cyc. 204, note 22, and cases cited; *Bailey* v. *Centerville*, 108 Iowa, 20, 78 N. W. 831; *Winter* v. *Railway*, 74 Iowa, 448, 38 N. W. 154; *West etc. Ry.* v. *Kennedy*, 165 Ill. 496, 46 N. E. 368; *Fuller* v. *Jackson*, 92 Mich. 197, 52 N. W. 1075; *Dickinson* v. *City*, 188 Mass. 595, 75 N. E. 68, 1 L. R. A., n. s., 664; *Kansas etc. Ry.* v. *Mathews*, 142 Ala. 298, 39 South. 207; *Illinois Cent. Ry.* v. *Harris* (Miss.), 29 South. 760; *Ft. Worth etc. Ry.* v. *Hyatt*, 12 Tex. Civ. App. 435, 34 S. W. 677; *McKeigue* v. *Janesville*, 68 Wis. 50, 31 N. W. 298.) Broadly stated, the rule is that "all evidence having a legitimate tendency to meet the evidence of loss or injury should be received in rebuttal." (13 Cyc. 193.)

There is a total failure to prove that the death resulted from the injuries. (See *McAuley* v. *Casualty Co.*, 37 Mont. 256, 96 Pac. 131; *Ellyson* v. *International etc. Ry.*, 33 Tex. Civ. App. 1, 75 S. W. 868; *Scheffer* v. *Railway*, 105 U. S. 249, 26 L. Ed. 1070; *Omaha etc. Ry.* v. *Brady*, 39 Neb. 27, 57 N. W. 767; *Manning* v. *Insurance Co.*, 100 U. S. 693, 25 L. Ed. 761; *Douglas* v. *Mitchell*, 35 Pa. 440; *Cole* v. *Boardman*, 63 N. H. 580, 4 Atl. 573.) "In an action for death by wrongful act, plaintiff must make it appear with reasonable certainty that the injury was inflicted as the result of defendant's negligence, and the jury cannot be permitted to arrive at a verdict by speculation or guesswork." (*Morhard* v. *Richmond L. & R. Co.*, 111 App. Div. 353, 98 N. Y. Supp. 124.) Upon the facts we cite the following: *Martinez* v. *Bernhard*, 106 La. 368, 87 Am. St. Rep. 306, 30 South. 901,

55 L. R. A. 671; *Briggs* v. *Railway,* 52 Minn. 36, 53 N. W. 1019; *Randall* v. *Railway,* 45 La. Ann. 778, 13 South. 166, at 169; *Galveston etc. Ry.* v. *Hanway* (Tex. Civ. App.), 57 S. W. 695; *Scherer* v. *Schlaberg,* 18 N. D. 421, 122 N. W. 1000; *Payne* v. *Railway Co.,* 155 Fed. 73, 83 C. C. A. 589; *Fitzgerald* v. *Railway,* 154 N. Y. 263, 48 N. E. 514.

Decedent assumed the risk: (a) The work was of a temporary changing character and one in which decedent was engaged in making the changing condition. (*Manning* v. *Railway,* 105 Mich. 260, 63 N. W. 312; *Evansville Ry.* v. *Henderson,* 134 Ind. 636, 33 N. E. 1021; *Baltimore etc. Ry. Co.* v. *Welsh,* 17 Ind. App. 505, 47 N. E. 184.)   (b) The danger was appreciated and well known to decedent. (*Ragon* v. *Railway Co.,* 97 Mich. 265, 37 Am. St. Rep. 336, 56 N. W. 612.)   See, also, the following cases, cited because of the facts in each particular case: *Atchison T. & S. F. Ry.* v. *Schroeder,* 47 Kan. 315, 27 Pac. 965; *Bridges* v. *Coal Co.,* 109 Ala. 287, 19 South. 495; *Hayball* v. *Railway,* 114 Mich. 135, 72 N. W. 145; *Woods* v. *Railway,* 39 Minn. 435, 40 N. W. 510; *Webber* v. *Piper,* 109 N. Y. 496, 17 N. E. 216; *Heywood* v. *Railway,* 38 Tex. Civ. App. 101, 85 S. W. 433; *McPeck* v. *Railway,* 79 Fed. 590, 25 C. C. A. 110; *Dempsey* v. *Sawyer,* 95 Me. 295, 49 Atl. 1035; *Stiles* v. *Richie,* 8 Colo. App. 393, 46 Pac. 694.

(c) The injuries were the result of the negligence of a fellow-servant. Insufficiency of the track's ballast, if it was insufficient, or any other defect in the track, which was controlled or under the direction of those there on the job, was most certainly due to the action of a fellow-servant of the decedent. This court has repeatedly held that the test is the character of the work. (*Goodwell* v. *Mont. Cent. Ry. Co.,* 18 Mont. 293, 45 Pac. 210; *Hastings* v. *Mont. U. Ry. Co.,* 18 Mont. 493, 46 Pac. 264; *Gregory* v. *Chicago M. St. P. R. Co.,* 42 Mont. 551, 113 Pac. 1123; see, also, *Lindvall* v. *Railway Co.,* 41 Minn. 212, 42 N. W. 1020, 4 L. R. A. 793; *Rittenhouse* v. *Railway Co.,* 120 N. C. 544, 26 S. E. 922; *Filbert* v. *Railway Co.,* 121 N. Y. 207, 23 N. E. 1104; *Walker* v. *Railway Co.,* 128 Mass. 8; *Slavens*

v. *Railway Co.,* 97 Fed. 255, 38 C. C. A. 151; *Woodward etc. Co.* v. *Cook,* 124 Ala. 349, 27 South. 455; *Florence etc. Railway Co.* v. *Whipps,* 138 Fed. 13, 70 C. C. A. 443; *Brunnell* v. *Railway Co.,* 34 Or. 256, 56 Pac. 129. On construction work generally: *Keith* v. *Iron Co.,* 81 Ga. 49, 12 Am. St. Rep. 296, 7 S. E. 166; *Maher* v. *McGrath,* 58 N. J. L. 469, 33 Atl. 945; *Muehlmann* v. *Railway Co.,* 58 Wash. 327, 108 Pac. 764; *Hoar* v. *Merrit,* 62 Mich. 386, 29 N. W. 15; *Curley* v. *Hoff,* 62 N. J. L. 758, 42 Atl. 731; *Callan* v. *Bull,* 113 Cal. 593, 45 Pac. 1017.) A track-layer and a servant engaged in ballasting the road have in England been expressly held to be fellow-servants. (*Lovegrove* v. *Railway Co.* and *Gallagher* v. *Railway,* 16 Com. B., n. s., 669.)

*Messrs. Walsh & Nolan,* and *Messrs. Heywood & Phelan,* submitted a brief in behalf of Respondent; *Mr. T. J. Walsh* argued the cause orally.

The record discloses that the action was brought against the corporation defendant and John Doe. The averments of the complaint are such that the action is a joint one against the defendants, so that no removal could be ordered. Whatever doubt may at one time have existed as to this, it was removed by the decision of the supreme court of the United States in the case of *Alabama G. S. R. Co.* v. *Thompson,* 200 U. S. 206, 26 Sup. Ct. 161, 50 L. Ed. 441, 4 Ann. Cas. 1147.

When the case was called for trial it was an action against the corporation and John Doe. Our courts provide that a person may be sued under a fictitious name. (Sec. 6592, Rev. Codes.) The statute of the United States providing for removal expressly requires that the petition shall be filed and that a good and sufficient bond shall be likewise filed. (Sec. 629, U. S. Comp. Stats.)

In *Higson* v. *North R. Ins. Co.,* 184 Fed. 168: "Two objections are urged to this petition: That simply filing the petition and bond with the clerk was not a compliance with the provisions of the statute; that they should have been presented to

the judge presiding so that he might pass upon their sufficiency. Several of the federal judges have so held, and it would seem correctly. Unless the attention of the judge of the state court is called to the petition and bond, how is it possible for him to grant or refuse the petition to remove?" (See, also, *Amory* v. *Amory,* 95 U. S. 186, 24 L. Ed. 428.)

Dr. Kellogg was asked as to whether, if tissues were weakened in any way, the patient was more susceptible to the ravages of germs than otherwise, that is to say: if the physical injury to the liver had not occurred and it had retained its normal, healthy condition, whether there was much likelihood of suppurative cholangitis occurring. This was the idea that the examination of the witness was intended to exploit. It is not necessary in such case as this that the complaint should undertake to give a specific catalogue of the plaintiff's injuries. It is enough that the declaration shows the injury complained of without describing it in all its seriousness, and a recovery should be had in proportion to the extent of the injury. (5 Ency. of Pl. & Pr. 746, 747.) Nor do the rules of pleading require that every effect or result following the infliction of particular injuries shall be set forth in the declaration in order to recover therefor, since such a course would, in effect, require the pleading of the entire evidence. (*Id.* 747; *Chicago R. Co.* v. *Sullivan* (Ill.), 17 N. E. 462; *Johnson* v. *McKee,* 27 Mich. 472.)

Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible is a preliminary question for the judge presiding at the trial, and his decision on it is conclusive unless clearly shown to be erroneous in matter of law. (*Bradford Glycerine Co.* v. *Kizer,* 113 Fed. 897, 51 C. C. A. 524; *Spring Co.* v. *Edgar,* 99 U. S. 645, 25 L. Ed. 487.)

The examination of Miss Peeples as to qualification discloses that she was a trained nurse, had followed that profession for sixteen years, and was at the time engaged as a nurse and was likewise superintendent of the hospital. The court certainly could not conclude from this that the witness possessed qualifi-

cations by which diseases could be diagnosed by her, or that she was able to say what diseases or complication of diseases the patient seemed to suffer from.   (See *Dominick* v. *Randolph,* 124 Ala. 557, 27 South. 481.)

The proof was sufficient to show that death resulted from the injuries.   The testimony of the doctors discloses exhaustive information about germs of all kinds and descriptions, but the evidence, notwithstanding, remains that Marsenich suffered serious injury which could cause the disease from which he died, and there is nothing in the record to warrant the assumption that the suppurative cholangitis from which he died was not due to this injury.   (See *McAuley* v. *Casualty Co. of America,* 39 Mont. 192, 102 Pac. 586; *Western Com. Travelers' Assn.* v. *Smith,* 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653; *Delaney* v. *Modern Acc. Club,* 121 Iowa, 528, 97 N. W. 91, 63 L. R. A. 603.)

No assumption of risk doctrine can be invoked on the facts which this case presents.   The doctrine of a safe place has application here.   The obligation resting upon the master in this respect is pithily announced in the case of *Pikesville etc. R. R.* v. *State,* 88 Md. 563, 42 Atl. 214, as follows: "It is the duty of the master to exercise all reasonable care to provide and maintain safe, sound and suitable machinery, roadway structures, and instrumentalities; and he must not expose his employees to risks beyond those which are incident to the employment, and even in contemplation at the time of the contract of service, and the servant or employee has a right to presume that the master has discharged those duties."   This language is quoted approvingly by this court in the case of *McCabe* v. *Mont. Cent. Ry. Co.,* 30 Mont. 333, 76 Pac. 701; see, also, *Schroder* v. *Montana Iron Works,* 38 Mont. 478, 100 Pac. 619.   Assumption of risk carries with it the requirement that the injured servant appreciates the risk.   (*O'Brien* v. *Corra-Rock Island Min. Co.,* 40 Mont. 228, 105 Pac. 724; *Stewart* v. *Pittsburg etc. Copper Co.,* 42 Mont. 200, 111 Pac. 723.)

We fail to see the force of the contention that the negligence of a fellow-servant is involved in the case presented.   Whoever

is charged with the duty of making the place safe, whatever his position is, stands in the shoes of the master. (*Northern Pac. R. R. Co.* v. *Herbert,* 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755.)

MR. JUSTICE SMITH delivered the opinion of the court.

Action for damages on account of the alleged negligence of the defendant in causing the death of plaintiff's intestate. Plaintiff had verdict and judgment. Defendant appeals from the judgment and an order denying its motion for a new trial.

1. The action was originally begun against the appellant and one John Doe, alleged to have been its foreman and superintendent. The appellant is a corporation, organized and existing under and by virtue of the laws of the state of Massachusetts. John Doe was not served with process and did not appear. After issues of fact were joined between plaintiff and the [1] appellant, the cause came on regularly for trial. The court inquired whether the parties were ready to proceed, whereupon plaintiff's counsel said, "Plaintiff is ready,—" when he was interrupted by defendant's counsel with the remark that he desired to file a petition and bond to remove the case to the federal court. Plaintiff's counsel, apparently continuing his original statement, said: "But we desire to reduce the amount of damages to $2,000." The district judge, who was, of course, present and best able to determine the purpose and attitude of plaintiff's counsel and to properly construe his conduct and judge of his intention, held in effect that he had not concluded his statement, and that what he intended to say, in answer to the court's inquiry, was that plaintiff was ready for trial, "except that he desired to amend his complaint." The court thereupon held that defendant's tender of petition and bond came after plaintiff had asked leave to amend by reducing the amount of damages demanded. The motion to amend was granted, and the cause was retained for trial, after it had been agreed that the petition and bond were sufficient in form and substance to effect a removal, had not the amendment been requested and allowed. It was the province of the district judge to determine

the question of fact involved in the controversy, and he having decided that plaintiff's counsel had not concluded his statement, this court cannot, under the circumstances, interfere with the finding.  Counsel for plaintiff had the undoubted right to conclude his statement without interruption by counsel for the other side, and to have a ruling on his motion, and it was conceded at the time of the incident that, if the request to amend was made before the petition and bond were tendered, the court properly retained the cause for trial.  We find no error in this action of the court.

2. The complaint alleges: "That the said defendant company and the said John Doe, so acting in its behalf in that regard, negligently failed to make said track reasonably safe for use, and negligently failed to provide in the ties used on said track sufficient ballast and support, and negligently failed to provide a reasonably safe roadbed for said track.  That the said Alexander Marsenich [deceased employee of defendant], on said 13th day of March, 1909, so in the usual course of his employment, and while, with others, directing the movement of one of said cars on said track, so loaded as aforesaid, the said car, while moving on said track, on account of the insufficient ballast and support for said ties as aforesaid and on account of said track being unsafe as aforesaid, said rails on said track on which said car was running sagged, by reason whereof the said car jumped the track," and plaintiff was injured.

Deceased, a native of Montenegro, twenty-one years of age, who had been in this country about two years, was engaged with others in loading rock into a dump-car on the banks of the Missouri river, at a point about 20 miles from Helena, where the defendant was engaged in constructing a power dam; their work was to fill the car by hand, then push it out over a track onto the dump, already constructed, into the river, where the rock was thrown into the water for the purpose of making a temporary dam to divert the water into a new channel.  As the dump was extended, the track was moved closer to its edge in order to carry the work forward; the track was moved three

or four times a day; the ties in some places were three feet apart, and in others six feet apart; they were laid on the rock. One Tom Fee was the foreman or superintendent; he was "bossing the job." Not anybody was above him in authority. He was the "head man." Three men were keeping the track in repair. A brother of the deceased testified: "Those fellows were kicking that the track was played out, and Tom Fee he says, 'Boys, go ahead,' he say. Alex. Marsenich was the one that was kicking about the track at the time. It was between 11 and 12 o'clock that my brother complained, and Fee told him to go ahead. About a quarter to 12 that night, when my brother was injured, we started with the car loaded with rocks. We were running the car by hand, just holding the car, not pushing, because the track was too much of an incline. The car upset because it got in a hole. That place was not in good condition. The rail was there, but it was not in good condition—not strong enough to support the car. At the time when the pressure came above that hole, the track incline a little bit— went down. After the track went down in that way, the car upset. When the car upset, that throwed my brother under the rocks."

Mike Chukish testified: "The last time that we took the trucks down there before Alex was injured, and when we started back with it, there were men repairing the track in the same time exactly as we were working there. When we got over to where these men were, they were raising up the track. When we went by with the trucks at the point where these men were repairing this track, these men went to the side and they let us go by. After we got by with the trucks, these men started in right away again to raise up the track. After the car was loaded (a second time), we went down to the track again—went to dump it. Q. And what, if anything, did Mr. Fee say to them before they started out? A. When the car was stopped, Mr. Fee said, 'Go ahead.' We stood there when Mr. Fee made that remark, because we could not take it over. Q. Now, then, when Fee told them, 'Go ahead,' and they went ahead, did they get

any signal at all from these men repairing the track there to stop? [This question was objected to as calling for testimony not within the issues framed by the pleadings.] A. No, sir; they didn't give no signal. The car went off the track. The truck got off the track at the same place where these men were repairing the track. The car got off the track because the ties were set on the rock. The track was put on the rocks about three feet high. The track kind of sunk there. On both sides of the ties were rocks, and then between is an empty space. There was no rock between—just rock under the ties, the car kind of shaking, both sides, and they couldn't stop the car, and it upset.''

It is contended that the court erred in allowing the witness to answer the question to which objection was made, as above indicated. It is said that this testimony can only relate to a failure to warn the deceased, which is not a ground of negligence as pleaded. We think the testimony was clearly admissible as being a part of the occurrence as the witness saw it. [2] Whether or not a ground of negligence, predicated upon a failure to warn of danger, could properly be considered by the jury was a matter to be decided upon settlement of the instructions. There is no complaint of the instructions.

3. When the car upset, Marsenich was thrown down by being struck with the rocks with which it was loaded, some of which were so large that it took four men to lift them. He was not able to get up without assistance, was ''complaining, trembling and shaking,'' and said that ''the car kill him.'' He was taken to the bank of the river, where he remained about six hours, complaining of suffering, and frequently passing blood through his mouth and with his stools; it was necessary to assist him to his boarding-house; ''he couldn't move; he couldn't stretch his limbs''; he remained at the boarding-house for two days, and was then taken to a hospital at Helena, where he remained seven days, when he was discharged as ''cured of his past illness.'' We next find him, a day or two later, in a saloon, ''lying against the wall, complaining''; he was taken to a lodging-house, where

he remained two nights, and from there to the county hospital, where he died three days later. The county physician, who had no distinct recollection of the case at the time of the trial, certified in writing that the cause of death was suppurative cholangitis. In order to make the next point clear, we quote from the brief of appellant's counsel: "It was specifically denied that decedent's death was caused by the accident; the only [3] proof with reference to his death was that he died of suppurative cholangitis, and that is caused by pus-producing organisms in the body; the doctors all agree that it was caused by pus-producing organisms, and that it would not come from external violence. Now, to avoid this, it was attempted to show that the injuries produced lesions or a weakened condition, this making a fruitful field for the germs, and this caused the death. Such testimony was clearly beyond the issues, and no allegation whatever is found which would admit of such proof." The particular question to which objection was made was propounded to Dr. Barbour by plaintiff's counsel: "And do I understand, whenever there is a weakening of tissue anywhere, there is a fruitful field for these germs to operate in? A. Why, yes; in a general way. Q. And if there is a breaking of the tissue, or any injury to it, is not that a field where these germs may operate in? A. Yes; that is true." At the time these questions were answered the plaintiff had not yet offered all of his evidence on the subject, and the matter appears somewhat irrelevant. We think the court properly allowed the questions at the time. Whether the evidence was relevant to the issues depends upon other testimony in the case.

Dr. Kellogg testified: "If there was a lesion there, or an inflammation existing there, and a field for it to work in, then you might have a pus formation there. Now, you take any injury from—it matters not—from any operation, from the removal of an ovary, any trouble where inflammation sets up, where there is peritonitis, that makes a field for these elements to work in, and they do work in it; but without there is a place for them to work, they are neutral, they are negative. For instance, a

lesion or breaking of the tissue, that constitutes a field. It constitutes it in this way: That you have a lesion, and that lesion is caused by traumatism as a rule, or from some injury. That lesion is followed by inflammation. Inflammation is done away with or overcome in two ways. One is by resolution or absorption, which clears up your trouble and you have no more of it. The other is suppuration, and where you have suppuration then you have a field for the germ to work in. Cholangitis is an inflammation of a bile duct, or a series of bile ducts. Injury causing inflammation to these bile ducts would bring about cholangitis. Q. Supposing, as a matter of fact, that a man standing beside a truck loaded with rocks, some of them so large that it would take four men to lift the rock, and that car upset, and some of the rocks strike him in the region around here [indicating], and inflicting injuries of such a character that there is a passage of blood through the stool, and also through the mouth; would an injury as serious as that be serious enough to inflict injuries upon these ducts that we are speaking of, and so as to cause cholangitis? A. Yes, sir. If I had a patient manifesting those symptoms after an injury, I would know from all reasons that I had a lesion, either of the tissue itself, of the liver structure itself, or of some of those ducts, or else I wouldn't have the hemorrhage. Then in a case of that kind a man may go on for a good many days with apparently no trouble, and the trouble that follows that is the suppuration that follows the traumatism, the injury, or the seat of the lesion.''

We think the foregoing testimony, including that of Dr. Barbour, was relevant under the pleadings, and competent, and amply sufficient to bring the case within the rule laid down in *McAuley* v. *Casualty Co. of America*, 39 Mont. 185, 102 Pac. 586. Under the testimony the jurors were justified in believing that Marsenich died from suppurative cholangitis, directly traceable to, and naturally caused by, the injuries received at the time the car of rock fell upon him. In the *McAuley Case* the injured person died from erysipelas, caused by the germs

of that disease introduced into her system through an injury to her leg.   The jury in the instant case evidently found that Marsenich died from suppurative cholangitis caused by germs, always present in the intestines and introduced into his liver or his gall ducts through lesions caused by the injuries which he received from being struck with the rocks.   There is substantial testimony to justify such a finding.   We do not consider the testimony of the defendant's witnesses on the subject, because the jury credited that of plaintiff's witnesses, as they were at liberty to do.

4. After Miss Peeples, the superintendent of the hospital, had testified that Marsenich complained only of pain in his knee, the hospital record of the case, kept by the nurses, was introduced; this record showed that he was suffering from pain, that he groaned once or twice during the first night, that hot fomentations were constantly applied, that he complained of a pain in his hand, that the pain jumped from his left to his right knee, that during the night of March 20 he "did not sleep much, apparently suffering but little pain," that at times he was apparently suffering no pain, that he had a pain in his left shoulder, that he complained of "pain in his left limb," also of "pain in shoulder."   Counsel then offered to prove by the witness that, from her experience as a nurse and "from these charts" (meaning the hospital records), she was "able to form an opinion with reference to the character of the suffering endured by the patient, and was able to state that he was not at any time in great or severe pain, and that there was nothing to indicate other than acute articular rheumatism trouble."   The offer was refused, and appellant assigns the ruling as error.   The offer [4]  was properly refused.   The witness had already testified of her own knowledge as to what symptoms of pain were manifested when she saw the patient.   The charts speak for themselves.   No expert could enlarge or circumscribe the meaning of the plain English words therein contained.   The latter part of the offer was incompetent.   Miss Peeples had not qualified

as a physician, able to diagnose the particular disease from which the patient suffered.

5. It is urged that the deceased assumed the risk of being injured as he was. We cannot say so, as a matter of law. It was a question for the jury to determine. Defendant had undertaken to keep the track in repair. Deceased had nothing to do with that work. He was not engaged in making the place in which he was injured. It was defendant's duty to exercise ordinary care to furnish him a reasonably safe track for the dump-car to pass over. The piece of track in question had just been repaired. Fee was there, in full authority, representing the defendant corporation. It does not appear as a matter of law that the danger was so obvious that deceased must be presumed to have appreciated it. He had a right to presume that the track was reasonably safe when ordered by Fee to go ahead, and it was his duty to instantly obey, unless the danger was known to and appreciated by [5] him, or was so obvious that all reasonable men would agree that he must have appreciated it. We find no such condition here. The matter was properly submitted to the jury, and the motion for a new trial, so far as this point is concerned, was properly overruled. (*Kelley* v. *Fourth of July Min. Co.,* 16 Mont. 484, 41 Pac. 273; *Allen* v. *Bell,* 32 Mont. 69, 79 Pac. 582; *Schroder* v. *Montana Iron Works,* 38 Mont. 474, 100 Pac. 619; *Hill* v. *Nelson Coal Co.,* 40 Mont. 1, 104 Pac. 876; *O'Brien* v. *Corra-Rock Island Min. Co.,* 40 Mont. 212, 105 Pac. 724; *Osterholm* v. *Boston & Mont. C. C. & S. Min. Co.,* 40 Mont. 508, 107 Pac. 499.)

It is said that deceased came to his death by reason of the negligence of fellow-servants, the track repairers. We do not place the same construction upon the testimony relating to this branch of the case as do appellant's counsel. We believe the evidence fairly shows that deceased was simply engaged in dumping rock into the river for the purpose of making a temporary dam, and that the keeping of the track on the dump in repair was an altogether different portion of the general work

which was being prosecuted by the defendant. The duty of [6] making the track reasonably safe rested primarily upon the defendant, and could not be delegated to others, so as to avoid liability for their negligence. (*Northern Pacific R. R. Co.* v. *Herbert,* 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755.) We think, moreover, that the jury would have been justified in finding that the overturning of the car was caused, not by any negligence of the trackmen, but on account of the fact that [7] the ties were simply laid upon the rock and were too far apart; in other words, by the negligence of the defendant in pursuing its general plan of operations. (See *Eeraert* v. *Eureka Lumber Co.,* 43 Mont. 517, 117 Pac. 1060.)

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

(Submitted September 22, 1911. Decided October 21, 1911.)