JENS G. JENSEN v. COMMODORE MINING COMPANY and Another.[1]

December 30, 1904.

Nos. 14,046—(150).

**Negligence—Assumption of Risk.**

> In this, a personal injury action, it is *held* that the evidence is sufficient to sustain the verdict of the jury, to the effect that the cause of the plaintiff's injury was not one of the risks assumed by him, and that the defendants were guilty of negligence which was the proximate cause of his injury.

Action in the district court for St. Louis county to recover $15,000 for personal injuries. The case was tried before Cant, J., and a jury which rendered a verdict in favor of plaintiff for $2,250. From a judgment entered pursuant to the verdict, defendants appealed. Affirmed.

*John G. Williams,* for appellants.

*Samuel A. Anderson* and *A. F. Storey,* for respondent.

START, C. J.

Action to recover damages for personal injuries sustained by the plaintiff while he was in the employ of the defendant mining company. Trial by jury, and verdict for the plaintiff for $2,250. The defendants made a motion for judgment in their favor notwithstanding the verdict, which was denied, and judgment entered on the verdict for the plaintiff, from which the defendants appealed.

There was evidence received on the trial tending to show these facts: The defendant mining company, hereafter designated as the company, owned and operated an iron mine known as the Commodore Mine in the county of St. Louis. The defendant McNeill was the superintendent of the mine, and the plaintiff was a skilled mechanic in the employ of the company. There was a shaft extending down into the mine at an angle of about twenty seven degrees from the horizontal to a

---

[1] Reported in 101 N. W. 944.

depth of two hundred forty feet. On one side of the shaft was a stairway extending the entire length of the shaft, which was four feet and eight inches wide. On the side of the stairway, and parallel therewith, were two skipways, in which skips or small cars were operated, by which ore was hoisted to the surface. On the day the plaintiff was injured, February 15, 1903, water had accumulated in the bottom of · the shaft to the depth of ninety feet. In order to pump this water out, a pump was placed on each of the skipways, one hundred fifty feet from the top of the shaft, and put in operation. When the water had been lowered some forty feet, it became necessary to lower the pumps; and the plaintiff was directed to assist in the work of moving one of them, and, in the due and proper discharge of this duty, he was compelled to, and did, stand upon the stairway, at a point one hundred fifty feet from the top thereof. The superintendent was with him on the stairway at the time. Although the stairway was slippery and dark, except as lighted by candles in the caps of the men, the place where the plaintiff was required to work was a reasonably safe one, if the stairway above him was kept clear while he was at work. The superintendent, without the knowledge of the plaintiff or warning to him, directed two miners to take down the shaft planks, sixteen feet long, eight inches wide, and two inches thick. The planks were to be laid inside the rails of the skipway, between the pump and the water, for the pump to slide down on.

The plaintiff had never seen or known of lumber or other materials being carried down the stairway until after he was injured. The practice in the mine, so far as he knew, was to lower timber and materials into the mine down the · skipways by means of rope and tackle. The miners took one plank down at a time, each one taking hold of an end thereof, and placing it under his left arm, and so carried the plank down the stairway past the pump, then crossed over into the skipways and placed the plank in position. Whether the plaintiff knew that planks were being so taken down was, under the evidence, a question of fact. After three or four planks had been so taken down, one of the miners brought a plank to the mouth of the shaft —the other miner then being absent—and put the end of it down the stairway a short distance, resting the lower end on a steam pipe, and the upper end on some timber. The pipe was vibrating, and the lower end

of the plank slipped off the pipe, shot down the stairway, and struck the plaintiff, knocking him from the stairway and breaking his leg.

The negligence of the defendants, alleged and relied on by the plaintiff, is briefly stated—that, by giving the order to take down the planks and permitting its execution in the way it was attempted, they subjected him to unusual danger and peril, of which he was ignorant, without giving any warning thereof.

The assignment of errors presents for review only this question: Were the defendants entitled to a directed verdict in their favor? They here insist that they were, for the following reasons: First, that the cause of the accident was one of the risks assumed by the plaintiff; second, no negligence on the part of the defendants was shown; third, the defendants' negligence, if any, was not the proximate cause of the plaintiff's injuries, but they resulted from the negligence of a fellow servant.

1. If the plaintiff's testimony, to the effect that he had no knowledge that planks were being carried down the stairway, was true—and of this the jury were the judges—it is clear that he did not assume the risks incident to such use of the stairway. The defendants, in this connection, invoke the rule which obtains in cases involving construction and repair work. The rule has no application to this case, for, if the defendants were negligent, it was because of their own act and omission in giving the order without warning. No question of vice principal is made in this case.

2. The second and third alleged reasons why a verdict should have been directed for the defendants may be considered together, for they are substantially one. The practical question in this case is whether there is any substantial evidence in this case to sustain the finding of the jury that the defendants were guilty of negligence in the premises, for, if they were, the negligence of the fellow servant was only concurrent. Franklin v. Winona & St. Peter R. Co., 37 Minn. 409, 34 N. W. 898; Thomas v. Smith, 90 Minn. 379, 97 N. W. 141.

It might seem at first blush that the taking of planks down this stairway was a feasible and safe way of getting them to the place where they were to be used in the shaft, and that reasonable men could not fairly reach different conclusions on the question. But when attentive consideration is given to all of the particular facts which the evi-

dence tends to establish, it is quite obvious that they might honestly draw different conclusions therefrom. The plaintiff was working at a place one hundred fifty feet from the top of the shaft, on the stairway, which was wet, slippery, and dark; he was in a reasonably safe place if loose materials did not fall or slide down the stairway, but in one of great peril if they did; he was helpless and unable to protect himself; and the order given by the defendants, with full knowledge of his position, and without warning to him, had a direct tendency to render the place in which he was required to work one of peril, in case of any accident or neglect in executing the order. This is demonstrated by the result.

The question then is, ought the defendants, in the exercise of ordinary care, to have anticipated that, as a result of carrying out their order without warning to the plaintiff, injury might result to him, or others at work with him on the stairway? If the defendants ought to have anticipated such a result, they were guilty of negligence, although they could not have anticipated that injury would result in the form or way in which it did in fact happen. Christianson v. Chicago, St. P. M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640.

We are of the opinion that this question was one of fact for the jury. The question of the proximate cause of an injury is ordinarily one of fact, to be solved by the exercise of practical sense, rather than by the application of any abstract definition of the term. The question in this case was one of fact, for, upon the hypothesis that the defendants were negligent, the plaintiff's injuries resulted directly from an attempt to execute their negligent order. If the jury found such to be the case, then, as already stated, the negligence of the fellow servant in attempting to execute such order would be a concurring and contributing cause of the plaintiff's injuries.

Judgment affirmed.