into here was in connection with the defendant's purpose in taking the girl. Was it for the purpose of marriage? It is placing the argument on an improper basis to claim that consent of the mother, obtained under false pretenses or by concealment of facts, would be the same as her giving no consent, and that the statute must be construed as requiring a valid consent; that is, a consent by which a contracting party would be bound. The provision of the statute is not open to such construction. We are only dealing with the specific crime of abduction as charged in the indictment, and nothing else. The law has provided for the punishment of the crime of bigamy, and severe penalties are imposed upon the perpetrators of such crimes; and there is a full definition of other phases of the crime of abduction of females under the age of 18 years, and this very subdivision 1 of section 282 of the Penal Code contains one for which the defendant, if he were previously married, might have been indicted. All that is involved in the crime of abduction, in the aspect in which it is now presented, is whether or not consent was obtained. That the defendant was a bigamist or a burglar, or a criminal of any other kind, or even a person of unimpeachable character, can make no difference. We cannot escape the conclusion that the influence of this evidence as to the marriage in Italy upon the minds of the jury, in bringing about a conviction, was irresistible. Whatever his other offense may have been, and however vile his intentions and conduct, the defendant is entitled to be tried only for the offense charged in the indictment.

The judgment, therefore, must be reversed, and a new trial ordered. All concur.

---

(101 App. Div. 395)

### ALECKSON v. ERIE R. CO.

(Supreme Court, Appellate Division, First Department, February 10, 1905.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—PROXIMATE CAUSE.

In an action for injuries to a servant, evidence *held* sufficient to show that the proximate cause of the accident was defendant's failure to keep a man upon the work to signal the operator of a stationary engine when to drop logs, which the servant was engaged in loading onto a float, and when to start and when to stop the engine.

2. SAME—ASSUMPTION OF RISK.

A servant engaged in loading lumber, who was in such a position, with reference to the engine which was used to hoist the same, that the engineer could not tell when to drop the lumber, with safety to such servant, without being signaled by some one who was in a position to command the whole situation, could not be held, as a matter of law, to have assumed the risk of the sudden withdrawal of the signalman, who had been furnished by the master, where an accident to him occurred immediately after the withdrawal.

3. SAME—NEGLIGENCE OF MASTER.

The fact that other servants than the foreman were at times appointed to signal a stationary engineer when and where to drop lumber is immaterial on the issue of the master's negligence in withdrawing the foreman from his position as signalman and failing to place any one else in his stead.

4. SAME—QUESTION FOR JURY.

In an action for injuries to a servant, caused by the act of a stationary engineer in so operating his engine as to permit a timber to fall upon the

servant. in the absence of the customary signalman whose duty it was to signal the engineer when to drop the timber, the jury could infer negligence on the part of the master from the withdrawal of the signalman from his station by the master's superintendent.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Aleck Aleckson against the Erie Railroad Company. From a judgment entered upon a dismissal of the complaint and from an order denying a new trial, plaintiff appeals. Reversed.

The action is to recover for personal injuries sustained while plaintiff was employed by the defendant in loading timbers upon a barge from a bulkhead, the plaintiff's claim being that through the defendant's negligence in doing the work one of the timbers dropped from the dock to the barge, struck and pinned him to the dock and broke his leg. Plaintiff was one of eight men engaged in the work of loading lumber from one of the railroad docks to a float in the river alongside the dock. In the water, near the lumber float, was a floating pile driver having engine and windlass and uprights over the tops of which ran a rope carried to shore and used to pull the logs from inshore to the edge of the dock, where they would tumble down on the float. The work required eight men—an engineer down on the floating pile driver to operate the engine on receiving signals; the foreman, who stood upon the dock in full view of the engineer and all the other men, and who gave signals to the engineer when to drop the logs, and when to stop and when to start the engine; two men on shore at the pile to receive the rope or cable and attach it to the timbers; and four men on the float to arrange the timbers after they fell down upon the boat. To this last work the plaintiff and three other men were assigned. The physical conditions were such that there was a question as to what extent the engineer could see the pile of lumber, or the men on shore, or the swinging logs, or the four men assigned to duty on the float. The engine was in a house on the pile driver, with a door in one end, and the engineer could see, while operating the engine, the signalman (the foreman), who stood upon the corner of the dock, where he could see every man on the work. The work continued without mishap, with the eight men in the positions indicated, for an hour on the morning in question. After the four men, including plaintiff, had arranged a log on the float, and had returned to the dock to wait there for the next log to reach the float, the superintendent or head foreman came along, and took off the foreman of the job, who was giving signals, and ordered the men remaining to proceed with the work, without designating or requesting any one to take his place to give the signals. After the foreman had gone the men went on with the work, and it would appear that some one of them, in addition to fastening the chain to one of the sticks of timber, attached a line to the other end, which the witnesses designate as a "snub" line, and tried if that would work. The plaintiff and the three other men who were working with him were then standing on the dock. As the stick or timber was drawn across the bulkhead instead of going straight on to the catamaran, for some unexplained reason it swung to the right towards the place where the plaintiff and the three other men were standing. The end of it was some six or seven feet above the heads of these men. The engineer then let the stick drop, and, although plaintiff started to run up the dock, he was not quick enough, for the timber coming down struck him on the leg, breaking it. At the close of the testimony the complaint was dismissed, and from the judgment entered on such dismissal the plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Vincent P. Donihee, for appellant.
Frederic B. Jennings, for respondent.

O'BRIEN, J. Whether the swerving of the log was or was not due to the "snub" line on the other end of it does not clearly appear, nor is

it necessary for us to determine. Apart from this, we think the evidence would justify the inference that the negligence of the engineer in operating the engine so as to drop the log onto the plaintiff was due to the absence of the signalman, for whose absence the defendant is chargeable. There being upon this a question of fact, taking the inferences most favorable to the plaintiff—which upon a nonsuit we must do—we think it was error to dismiss the complaint, because there was sufficient evidence from which the jury could conclude that the proximate cause of the accident was the failure of the defendant to keep upon the work a signalman, without whose presence an accident was probable, and, as appears, happened the moment he was withdrawn. Without the signalman the engineer could not, with safety, determine when and where he should drop the timbers, and those who, like the plaintiff, were engaged in laboring work on the dock, had a right to assume that some one would be designated by the master to give the customary signals to the engineer. They cannot be said to have assumed the risk of the absence of the signalman, for such risk did not exist until a moment before the accident, at which time the signalman had been withdrawn. If, with the knowledge of this fact, the plaintiff had continued to work, then the doctrine of assumed or obvious risk would apply; but in view of the testimony showing that but a brief interval of time elapsed between the removal of the signalman and the accident we do not think that, as matter of law, it can be said that the plaintiff assumed the risk, and thus barred his right to recover.

We have not overlooked the testimony given that it happened at times when the foreman went away that some of the other men were appointed to give the signals in his stead, nor the fact that upon another occasion and in another employment this plaintiff himself had performed that duty. Such testimony only tends to prove that the duty of the signalman demanded no special skill or proficiency, but that any of the employés engaged in handling the timber could give the signals as well as the foreman. The consideration of this evidence, however, does not help us to solve the question presented, because, no matter how easy it might have been for any of those engaged upon the work to have acted as signalman, the fact here appears that no one was so designated to act after the foreman was called away. The testimony in this case is that no request or designation of any one was made to take the foreman's place when he withdrew. It must, we think, be conceded that an important part of the work was the lowering of the timbers to the deck of the catamaran, and that a signalman was necessary to prevent accidents.

Starting with the view that we entertain that the jury could find as matter of fact upon the evidence that the proximate cause of the accident was the sudden lowering of the timber, due to the absence of the signalman, we do not see why the jury had not the right legally to infer that the act of the superintendent, who was its alter ego, in taking away the foreman signalman, and designating no one to take his place, was not guilty of negligence. The jury could reasonably infer that the accident would not have happened had there been a signalman attending to his duties, and the fact that the signalman who was so engaged left his position does not excuse the defendant. In Flike v.

B. & A. R. R. Co., 53 N. Y. 549, 13 Am. Rep. 545, it was held that, where an agent of the defendant, whose duty it was to make up and dispatch trains, sent out a heavy freight train with but two brakemen, when three were required, and in consequence a fireman was killed, the defendant was liable. With respect to the duty imposed upon the master, we can think of no distinction in principle between engaging in a hazardous work with insufficient men or starting the work with a sufficient number and then removing one, whose absence made the work extrahazardous. It was necessary for the safety of this work that there should be a signalman; and this duty was not discharged by the master appointing one, and then, after, directing him to leave. We think, considering the dangerous character of the work and the important relation which the signalman bore to its safety, that the duty rested upon the master of seeing to it that some one was at all times supplied who could attend to this work.

Upon the question, therefore, of the defendant's negligence, we think it was one for the jury, equally with that of the plaintiff's contributory negligence or assumption of risk, which, upon the evidence, should have been submitted to the jury as questions of fact, and not disposed of on the motion to dismiss the complaint as matters of law.

It follows that the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. I do not concur in the reversal of this judgment, as I do not think that the evidence shows that the injury was caused by the withdrawal of the signalman, or the act of the engineer in lowering the timber, caused by his failure to receive a signal from the signalman.