STEWART, RESPONDENT, *v.* STONE & WEBSTER EN-
GINEERING CORPORATION ET AL., APPELLANTS.

(No. 3,010.)

(Submitted November 4, 1911.  Decided November 20, 1911.)

[119 Pac. 568.]

*Master and Servant—Personal Injuries—Joint Negligence of*
*Master and Fellow-servant—Duty of Master to Give Signals,*
*When—Proximate Cause—Pleading and Proof — Warning—*
*Evidence—Admissibility—Presumptions—Nonsuit—Joint Mo-*
*tion—When Denial Proper.*

Master and Servant—Personal Injuries—Unsafe Place—Knowledge on Part
of Master—Evidence.

1. In a personal injury action in which negligence was predicated
upon the failure of defendant company to furnish plaintiff a reason-
ably safe place to work and maintain it in that condition, it was in-
cumbent on the latter to show that the place was dangerous and that
defendant knew, or in the exercise of ordinary care ought to have
known, of the danger, and for the purpose of bringing home such
knowledge to defendant, one of his witnesses was properly permitted
to testify to a conversation had by him with its general superintendent
immediately before the accident, in which he called attention to the
dangerous character of the place; nor was the admissibility of such
testimony affected by the fact that plaintiff was not present and did
not know of the conversation.

Same—Negligent Method—Evidence—Admissibility.

2. Testimony of how a large iron bucket, which was instrumental in
causing plaintiff's injuries, was used before and after it was unloaded
of its contents of earth and rock was admissible as tending to shed
light upon the issue whether defendant was negligent in pursuing a
general plan or method of carrying on its operations, since a master
may become liable in pursuing a negligent system or employing a
negligent mode of operating otherwise sound machinery.

Same—Nonsuit—Presumptions.

3. On a motion for nonsuit every fact will be deemed proved which
the evidence tends to prove.

Same—Joint Negligence of Master and Fellow-servant—Effect.

4. Where a personal injury is the result of the negligence of a fellow-
servant conjointly with that of the master, the defense embodied in
the fellow-servant doctrine is not available to the employer.

Same—Failure to Give Signals—Negligence.

5. Defendant company, employing hundreds of men in the construction
of a power dam, by means of a derrick and large iron bucket removed
earth and rocks from excavations. The engineer in charge of the der-
rick machinery was so situated as not to be able to see either the place
of excavation, that of unloading, nor the men at their work. Plaintiff
was injured by the bucket being lowered upon him. *Held,* that under
such circumstances it is the duty of the master to furnish a signalman

to direct the movements of the engineer, and that defendant's lapse of duty in this regard constituted actionable negligence.

Same—Complaint—Held Sufficient, When.

6. In the absence of a special demurrer to the complaint in a personal injury action, the allegations of which are general in terms, or a motion to make more specific, it will be held sufficient.

Same—Acts of Negligence—Proof of One Sufficient.

7. Plaintiff was not required to prove every act of negligence charged; it was sufficient if he proved any of those pleaded which proximately caused the injury.

Same—Liability—Anticipation of Particular Injury not Necessary—What Sufficient—Jury Question.

8. To hold the defendant liable it was not necessary that it should have anticipated the particular injury which did result. Liability attached if it ought to have anticipated that *some* injury was likely to result as the reasonable and natural consequences of its omission to have a signalman present to direct the engineer, and of its negligent plan of operation; and whether it should have so anticipated was a question for the jury.

Same—Place Rendered Unsafe—Warning—Duty of Master.

9. Where an employer assigns his servant to a place to work which is apparently perfectly safe, but rendered unsafe by dangers of which the latter is unaware, the former is guilty of a breach of duty if he fails to inform the employee of such dangers.

Same—Nonsuit—Joint Motion—When Denial Proper.

10. In a personal injury action against two defendants, a joint motion for a nonsuit was properly denied where the evidence was sufficient to go to the jury on the question of culpable negligence on the part of one of them; since a cause should not be withdrawn from the jury unless, as a matter of law, recovery cannot be had upon any view which can reasonably be drawn from the facts which the evidence tends to establish.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by Patrick J. Stewart against the Stone & Webster Engineering Corporation and another. From a judgment for plaintiff, and from an order denying their motion for a new trial, defendants appeal. Judgment affirmed as to defendant corporation, and reversed as to its codefendant, John Brown.

*Mr. E. C. Day,* for Appellants, submitted a brief and made oral argument.

By his election at the close of the testimony, pursuant to the order of court, the plaintiff elected to stand on the allegation of his complaint that the signalman, the defendant, John Brown, was present giving signal, but negligently omitted to give any

signal after the skip had started on its flight, and thus permitted it to be lowered at the wrong place. Such an act of negligence was that of a fellow-servant, for which the defendant company was not liable, and the motion for nonsuit should have been sustained as to the defendant engineering corporation, upon this ground. Where the plaintiff's evidence discloses that the injury was occasioned by the negligence of a fellow-servant, a motion for nonsuit should be sustained. (*Longpre* v. *Big Black Foot Milling Co.*, 38 Mont. 99, 99 Pac. 131.)

The signalman was plaintiff's fellow-servant. The rule now unquestionably established and supported by the great weight of authority both in this country and in England is, that the liability of the master depends upon the character of the act in the performance of which the injury arises, and not the grade or rank of the negligent employee. If the act is one pertaining to the duty the master owes to his servant he is responsible for the manner of its performance without regard to the rank of the servant or employee to whom it is intrusted; but if it is one pertaining only to the duty of an operative, the employee performing it is a fellow-servant with his colaborers, whatever his rank, for whose negligence the master is not liable. (*Mast* v. *Kern*, 34 Or. 247, 75 Am. St. Rep. 580, 54 Pac. 950; *Allen* v. *Bell*, 32 Mont. 69, 79 Pac. 582; *Gregory* v. *Chicago M. & St. P. Ry. Co.*, 42 Mont. 551, 113 Pac. 1123; *Goodwell* v. *Montana Central Ry. Co.*, 18 Mont. 293, 45 Pac. 210; *Hastings* v. *Montana Union Ry. Co.*, 18 Mont. 493, 46 Pac. 264; *Mulligan* v. *Montana Union Ry. Co.*, 19 Mont. 135, 47 Pac. 795.) It was also early determined in this state that one of the risks incident to such work was the negligence of the superior servant in warning the other servants of the changing conditions of operation. (*Goodwell* v. *Montana Central Ry. Co.*, supra; *Cummings* v. *Helena & L. S. & R. Co.*, 26 Mont. 434, 68 Pac. 852; *Callan* v. *Bull*, 113 Cal. 593, 45 Pac. 1017; *Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417, 49 Pac. 559.) California also follows the rule that signalmen and superior servants are fellow-servants when giving signals to facilitate the operation of the work. (*Daves*

v. *Southern Ry. Co.,* 98 Cal. 19, 35 Am. St. Rep. 133, 32 Pac. 708; *Donovan* v. *Ferris,* 128 Cal. 48, 79 Am. St. Rep. 25, 60 Pac. 519; *McLean* v. *Blue Point G. M. Co.,* 51 Cal. 255; *Stephens* v. *Doe,* 73 Cal. 26, 14 Pac. 378; *Donnelly* v. *San Francisco Bridge Co.,* 117 Cal. 417, 49 Pac. 559.)

The general proposition that it is the duty of the master to give warning is not to be so extended as to require him to give in person or insure the giving by others of all those special signals or shouts which are so associated with the work of operation as to become a part of it. The employment of different men in different parts of the general work requires under many circumstances the giving of signals as an accompaniment of the work itself, in order that there may be co-operation in the movement of the men. The giving of such signals is a part of the work of operation. Such signals are rather the giving of information of what one workman is about to do, in order that his fellow-workmen may have knowledge of it and conduct themselves accordingly, than the giving of orders which are to be considered as the orders of a master. (*Standard Oil Co.* v. *Anderson,* 212 U. S. 216, 29 Sup. Ct. 252, 53 L. Ed. 480.)

The master may intrust to a competent servant the work of shouting or otherwise signaling when he is about to hoist or lower away, and it is not the master's fault if such a servant fails to inform his fellow-servants of the movement of the machine under his charge, and where the foreman or boss of the gang is giving the signals, he becomes a fellow-servant of the other workman. The following cases are illustrative of the character of cases in which the rule has been applied: *Maine & N. H. Granite Corp.* v. *Hachey,* 173 Fed. 784, 97 C. C. A. 508; *American Bridge Co.* v. *Seeds,* 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A., n. s., 1041; *Kreigh* v. *Westinghouse etc. Co.,* 152 Fed. 120, 81 C. C. A. 338, 11 L. R. A., n. s., 684; reversed on another point, 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984; *Westinghouse etc. Co.* v. *Callaghan,* 155 Fed. 397, 83 C. C. A. 669, 19 L. R. A., n. s., 361; *Acme Coal Min. Co.* v. *McIver,* 5 Colo. 267, 38 Pac. 596; *Dill* v. *Marmon,* 164 Ind. 507, 73 N. E. 67, 69 L. R. A. 163;

*Rocco* v. *Gillespie Co.,* 73 N. J. L. 591, 64 Atl. 117; *Kelly* v. *Hogan,* 76 N. Y. Supp. 913, 37 Misc. 761; *Brabham* v. *American Tel. & Tel. Co.,* 71 S. C. 53, 50 S. E. 716; *Lane Bros. & Co.* v. *Bauserman,* 103 Va. 146, 106 Am. St. Rep. 872, 48 S. E. 857. When the hoisting and loading of machinery is in operation, it is necessary for the master to provide for warnings and signals, to render the working place safe for those employed, where they are liable to be struck by the buckets or cable or other falling or movable things.    There is a conflict in the authorities upon this point, but the weight of authority is in favor of the delegability of this duty.    (*Galvin* v. *Pierce,* 72 N. H. 79, 54 Atl. 1014; *Hermann* v. *Port Blakely Mill Co.,* 71 Fed. 853; *Portance* v. *Lehigh Valley Coal Co.,* 101 Wis. 574, 70 Am. St. Rep. 932, 77 N. W. 875; *Ocean S. S. Co.* v. *Cheeney,* 86 Ga. 278, 12 S. E. 351; *Shaw* v. *Bambrick-Bates Constr. Co.,* 102 Mo. App. 666, 77 S. W. 96; *Maine & N. H. G. Co.* v. *Hachey,* 173 Fed. 784, 97 C. C. A. 508.)

A master is not bound to anticipate that a competent servant might be negligent, and to warn his other servants of danger which might arise from such possible negligence.    (*Crown Cotton Mills* v. *McNally,* 123 Ga. 35, 51 S. E. 13; see, also, the note to the case of *Ahern* v *Amoskeag Mfg. Co.,* 75 N. H. 99, 71 Atl. 213, 21 L. R. A., n. s., 89.)

It is alleged that the defendant company and its superintendent were negligent in exciting and confusing the servants so that they made the place more dangerous to work.    But that fact does not excuse the negligence of the fellow-servant, or relieve the plaintiff of the effects of his negligence.    Because an employee is told to do a thing as quickly as possible is no excuse for his being guilty of negligence in its doing whereby he is injured, nor does it afford him a cause of action for the injury.    (*Illinois Car & Equip. Co.* v. *Walch,* 132 Ala. 490, 31 South. 471.)    The facts that the boss hurried the men and used oaths, whereby they became confused and failed to act in concert, do not show negligence on his part, or excuse negligence on theirs.    The use of oaths and imprecations by the boss is not an element of negli-

gence. (*Coyne* v. *Union Pac. Ry. Co.*, 133 U. S. 370, 10 Sup. Ct. 382, 33 L. Ed. 651.)

*Messrs. Purcell & Horsky* submitted a brief in behalf of Respondent; *Mr. R. R. Purcell* argued the cause orally.

Phee, the superintendent, was the responsible agent of the company in the carrying forward of the work, and, being in exclusive control, represented the appellant corporation, and was therefore a vice-principal. (*Gregory* v. *Chicago, Mil. & St. Paul Ry. Co.*, 42 Mont. 551, 113 Pac. 1123; *Allen* v. *Bell*, 32 Mont. 69, 79 Pac. 582.) This being so, the appellant is responsible for his negligent acts. (*Hill* v. *Nelson Coal Co.*, 40 Mont. 1, 104 Pac. 876; *Allen* v. *Bell*, 32 Mont. 69, 79 Pac. 582; *Berg* v. *Boston & Mont. Con. C. & S. Min. Co.*, 12 Mont. 212, 29 Pac. 545, 17 Morr. Min. Rep. 470; *Kelley* v. *Fourth of July M. Co.*, 16 Mont. 484, 41 Pac. 273; *Kelley* v. *Cable Co.*, 7 Mont. 70, 14 Pac. 633; *Skelton* v. *Pac. Lumber Co.*, 140 Cal. 507, 74 Pac. 13; *Mathews* v. *Daly West Min. Co.*, 27 Utah, 193, 75 Pac. 722; *Beresford* v. *American Coal Co.*, 124 Iowa, 34, 98 N. W. 902, 70 L. R. A. 256.) At the time of the accident he was giving orders relating to the doing of the work which is the duty of the master and is nondelegable. (12 Current Law, 729, 730; *Gould Const. Co.* v. *Childers*, 129 Ky. 536, 130 Am. St. Rep. 473, 112 S. W. 622.) If he did not give the orders which caused the skip to be operated in the manner it was, the effect of the appellant's failure to put him upon the stand was, as stated in the case of *Gulf C. & S. F. Ry. Co.* v. *Ellis*, 54 Fed. 481, 4 C. C. A. 454, that the proof, if produced, instead of rebutting, would have supported the inferences against him, and the jury was justified in acting upon that conclusion.

Respondent was not warned, instructed or notified of any of the dangers surrounding his working place, although in the exercise of reasonable care and caution the appellant corporation and its representatives should have done so, as the danger was reasonably to be apprehended. (*Coleman* v. *Perry*, 28 Mont. 1, 72 Pac. 42; *Kelley* v. *Cable Co.*, 7 Mont. 70, 14 Pac. 633; *Stephens*

*v. Elliott,* 36 Mont. 92, 92 Pac. 45; *Berg* v. *Boston & Mont. etc. Co.,* 12 Mont. 212, 29 Pac. 545, 17 Morr. Min. Rep. 470.)

One of the primary duties of the master is to exercise ordinary care to provide and maintain for his servants a reasonably safe place in which to work. (*McCabe* v. *Montana Cent. Ry. Co.,* 30 Mont. 323, 76 Pac. 701; *O'Brien* v. *Mining Co.,* 40 Mont. 212, 105 Pac. 724.)

But appellant contends that even though the general superintendent, a vice-principal, failed to warn and instruct respondent, his failure so to do was the act of a fellow-servant. This contention has been disapproved by this court. A like contention was made in the case of *Hill* v. *Nelson Coal Co.,* 40 Mont. 1, 104 Pac. 876, and the case of *McClaine* v. *Head & Dowst Co.,* 71 N. H. 294, 93 Am. St. Rep. 522, 52 Atl. 545, 58 L. R. A. 462, was there, as here, cited by counsel for appellant in that case in support of their contention. This court, after reviewing the *McClaine Case,* rejected it as somewhat extreme. (See, also, *Allen* v. *Bell,* 32 Mont. 69, 79 Pac. 582.)

The propositions heretofore urged upon this branch of the case are sustained by the weight of authority. (See 20 Am. & Eng. Ency. of Law, 2d ed., 97; *Campbell* v. *Jones,* 60 Wash. 265, 110 Pac. 1083; *Tedford* v. *Los Angeles Elec. Co.,* 134 Cal. 76, 66 Pac. 76, 54 L. R. A. 85; *Jacobson* v. *Rothschild,* 62 Wash. 127, 113 Pac. 261; *Hall* v. *N. W. Lumber Co.,* 61 Wash. 351, 112 Pac. 369; *Conine* v. *Olympia Logging Co.,* 36 Wash. 345, 78 Pac. 932; *O'Brien* v. *Page Lumber Co.,* 39 Wash. 537, 82 Pac. 114; *Comrade* v. *Atlas Lumber Co.,* 44 Wash. 470, 87 Pac. 517; *Eidner* v. *Three Lakes,* 45 Wash. 323, 88 Pac. 326; *Maloney* v. *Stetson etc. Co.,* 46 Wash. 645, 90 Pac. 1046; *Dossett* v. *St. Paul etc. Co.,* 40 Wash. 276, 82 Pac. 273; *Bone* v. *O'Phir Silver Min. Co.,* 149 Cal. 293, 86 Pac. 685; *Inland Steel Co.* v. *Smith* (Ind. App.), 75 N. E. 852; *Brice-Nash* v. *Barton Salt Co.,* 79 Kan. 110, 131 Am. St. Rep. 284, 98 Pac. 768, 19 L. R. A., n. s., 749; *Gould Const. Co.* v. *Childers,* 129 Ky. 536, 130 Am. St. Rep. 473, 112 S. W. 622; *Daly* v. *Kiel,* 106 La. 170, 30 South. 254; *Anderson*

v. *Pittsburg Coal Co.,* 108 Minn. 455, 122 N. W. 794, 26 L. R. A., n. s., 624.)

Counsel, however, urges in this connection that the accident in this case was an unexpected and unusual one that could not be foreseen, and, therefore, the master was relieved of the duty of warning respondent. It is not necessary that the master or his representatives should have anticipated the particular injury which did result. (See *Mize* v. *Rocky Mt. Bell Tel. Co.,* 38 Mont. 521, 129 Am. St. Rep. 659, 100 Pac. 971, 16 Ann. Cas. 1189.; *El Paso & N. W. Ry. Co.* v. *McComus,* 36 Tex. Civ. App. 170, 81 S. W. 760; *Boin* v. *Sugar Co.,* 155 Cal. 612, 102 Pac. 937; *Doyle* v. *Chicago etc. Co.,* 77 Iowa, 607, 42 N. W. 555, 4 L. R. A. 420; *Jensen* v. *Commodore Min. Co.* 94 Minn. 53, 101 N. W. 944; *Texas & P. Ry. Co.* v. *Carlin,* 111 Fed. 777, 49 C. C. A. 605.) However, the question whether or not the appellant or its representatives could, in the exercise of ordinary care, have anticipated that injury might result to respondent under the circumstances in this case was one of fact for the jury. (*Jensen* v. *Commodore Min. Co.,* 94 Minn. 53, 101 N. W. 944; *Standard Oil Co.* v. *Brown,* 218 U. S. 78, 30 Sup. Ct. 669, 54 L. Ed. 939.)

Any testimony which shows, or has a tendency to show, knowledge upon the part of the master of the dangerous character of the place in which one of his servants is ordered to work, is admissible. "Statements, admissions or declarations of a foreman or superintendent are generally admissible when they show knowledge of the conditions prior to or at the time of the accident, or are part of the *res gestae.*" (8 Encyclopedia of Evidence, 544; 6 Thompson on Negligence, sec. 7770; see, also, *Colorado City* v. *Liafe,* 28 Colo. 468, 65 Pac. 630; *Missouri K. & T. Ry. Co.* v. *Young,* 4 Kan. App. 219, 45 Pac. 963; *Brady* v. *Norcross,* 174 Mass. 442, 54 N. E. 874.)

We believe the following cases are decisive of the case at bar: *Aleckson* v. *Erie Ry. Co.,* 101 App. Div. (N. Y.) 395, 91 N. Y. Supp. 1029; *Westerlund* v. *Rothschild,* 53 Wash. 626, 102 Pac. 765; *Dossett* v. *St. Paul etc. Co.,* 40 Wash. 276, 82 Pac. 273; *Anderson* v. *Pittsburg Coal Co., supra; Gould Const. Co.* v.

*Childers,* 129 Ky. 536, 130 Am. St. Rep. 473, 112 S. W. 622; *Western Electric Co.* v. *Hanselmann,* 136 Fed. 564, 69 C. C. A. 346, 70 L. R. A. 765; *Thomas* v. *Cincinnati Ry. Co.,* 97 Fed. 245; *Brice-Nash* v. *Barton Salt Co.,* 79 Kan. 110, 131 Am. St. Rep. 284, 98 Pac. 768; *Michaels* v. *Roanoke,* 90 Va. 492, 44 Am. St. Rep. 927, 19 S. E. 261.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The plaintiff was employed by the defendant corporation as a common laborer about its work constructing a dam across the Missouri river at Hauser Lake. Considerable excavation was being done and the earth and rock removed by means of a large skip or iron bucket. This skip when empty weighed 1,400 pounds, or thereabouts, and when filled with material, from a ton and a half to two tons. The skip was moved by means of a derrick operated by an engine. A cable was attached to the skip, run through a pulley at the upper end of the boom of the derrick, then down to the base of the boom and around the drum at the engine. The boom operated on a pivot, and, when the skip was filled with excavated material and raised to clear obstructions, the boom was swung to the left—the skip describing the arc of a circle—and the material deposited near the bank to be removed by a derrick on a scow anchored in the river. The situation of the engine operating the derrick, the place of excavation, and the location of the scow were such that, by reason of the unevenness of the ground, the engineer could not see the men filling the skip, the path over which the skip traveled, and the place at which the material was deposited, and to carry on the work it was necessary for the defendant corporation to employ a man to occupy a high and advantageous point of ground, from which all the operation could be seen, and direct the engineer by means of signals. On January 29, 1909, this plaintiff was taken from work upon which he had theretofore been employed, and directed by the defendant corporation's superintendent to assist another man in drilling holes in frozen

ground, about fifteen feet from the place where the skip was unloaded, for the purpose of blasting out an embankment. The place where plaintiff was put to work was directly in the path over which the skip swung. While plaintiff was bending over cleaning out a hole already drilled, the skip loaded with excavated material was lowered upon him, causing the injuries of which he complains. He brought this action to recover damages, and joined with the defendant corporation John Brown, who was the foreman of the excavating gang and signalman.

The complaint is quite voluminous, and we content ourselves with the statement of its contents as we analyze it. It charges negligence on the part of the corporation in the following particulars: (1) In failing to exercise reasonable care to provide for plaintiff a reasonably safe place in which to work, and to maintain it in a reasonably safe condition; (2) in imposing upon the signalman an amount of work too great for him to discharge properly; (3) in rushing the work to such an extent that the men employed in its execution were greatly confused and unable properly to discharge their duties; (4) in failing to have the skip hoisted to a height sufficient to avoid striking plaintiff as it swung back and forth to and from the place of excavation; (5) in failing to warn plaintiff of the danger surrounding the place where he was put to work drilling, or to notify him of approaching danger; and (6) in the general plan or method of carrying on the work. It charges negligence on the part of both defendants in failing to give any signal to the engineer by which he could control the movements of the boom and skip at the time plaintiff was injured.

The defendant Brown answered denying any negligence on his part. The corporation answered separately, denying negligence on its part and pleading affirmatively that plaintiff's injuries were caused by his own negligence; that he assumed the risk of injury; and that his injuries were caused by the negligence of his fellow-servants. These affirmative pleas were put in issue by reply. At the conclusion of plaintiff's testimony the defendants interposed a joint motion for nonsuit, and the defendant Brown made a separate motion. These motions were

overruled, and defendants then declined to offer any testimony, and the case went to the jury upon the evidence introduced by the plaintiff. Before the cause was submitted, defendants moved the court to compel plaintiff to elect whether he proceeded upon the theory that defendant Brown was present giving a signal to the engineer, or did not give the signal. The motion was granted. The record recites: "Thereupon the plaintiff elected to stand upon the allegations of the complaint as amended, and as to that particular allegation that the defendant John Brown omitted to give proper signal for the movement of the skip after it was on its way to be dumped." The trial resulted in a judgment in favor of the plaintiff, and from that judgment and an order denying their motion for a new trial defendants have appealed. The specifications of error are treated under four heads: (1) The admissibility of evidence given by the witness Bartlett; (2) the admissibility of evidence given by the witnesses Hogan and Law; (3) the order of the court denying defendant Brown's separate motion for a nonsuit; and (4) the order denying the motion for a nonsuit made by both defendants.

1. Over objection of the defendants, Lloyd Bartlett, a witness for plaintiff, was permitted to testify to a conversation which [1] he had with the general superintendent of the defendant company immediately before the plaintiff was injured. So far as material here, that conversation was as follows: "The superintendent came to me and asked me why I didn't have a man drilling in that bank down there. It was the same bank, the only bank there was there, the only bank. I told him it was too dangerous a place to put a man working at that place. It was a death-trap. He said, 'Where is the man that is doing this work?' and I said, 'I don't know,' and he says, 'I will go and find him,' and he went away and found him, and this man [plaintiff] came back and went to work."

In the complaint negligence is predicated upon the failure of the defendant company to exercise reasonable care to provide a reasonably safe place for plaintiff to perform his work and maintain the place in a reasonably safe condition. Facts and

circumstances were produced to show that the place of plaintiff's employment was dangerous, and this evidence elicited from the witness Bartlett tended to bring home to the defendant company, who was the master, knowledge or warning of the danger before plaintiff was put to work, and was properly admitted for that purpose; and it was wholly immaterial that the plaintiff was not present or did not know of the conversation. (*Colorado City* v. *Liafe*, 28 Colo. 468, 65 Pac. 630.) It was incumbent upon the plaintiff to show that the place of his employment was dangerous and that the master knew of the danger, or, in the exercise of ordinary care, ought to have known of it. (26 Cyc. 1142.)

2. The witnesses Hogan and Law testified to the manner in [2] which the skip or iron bucket was used before and after it was unloaded. We think this evidence was properly admissible as tending to show that the general plan or method of operation pursued by the defendant company was negligent (26 Cyc. 1154); for a negligent system or place of work, or a negligent mode of using perfectly sound machinery, may make the master liable. (*Thomas* v. *Cincinnati, N. O. & T. P. Ry. Co.* (C. C.), 97 Fed. 245; *Eeraert* v. *Eureka Lumber Co.*, 43 Mont. 517, 117 Pac. 1060; *Kelly* v. *City of Butte, ante,* p. 115 119 Pac. 171.)

3. The separate motion for nonsuit interposed by the defendant Brown should have been sustained. There is not any substantial evidence tending to show actionable negligence on his part, and this is practically conceded by counsel for respondent.

4. We are unable to determine upon what theory the motion to require plaintiff to elect was made or sustained. The complaint charges negligence on the part of both defendants in failing to give a signal to the engineer. Upon motion for nonsuit [3] every fact will be deemed proved which the evidence tends to prove (*McCabe* v. *Montana Central Ry. Co.*, 30 Mont. 323, 76 Pac. 701; *Cain* v. *Gold Mt. Min. Co.*, 27 Mont. 529, 71 Pac. 1004), and in the further consideration of this case we will speak of the evidence in the light of this rule.

A. It appears that, at the time plaintiff was put to work drilling, the derrick was idle; that it was the first skip moved thereafter which injured him; that the general superintendent came upon the ground, spoke to plaintiff, who was then at work, and gave the signal to the engineer to start the skip; that he then sent Brown away to another part of the work and he himself gave his attention to the men about him. The engineer started his engine, raised the skip from the place where it was loaded, and swung it around. There is sufficient evidence—though negative in character—that there was not any signal given to the engineer to lower the skip, and, so far as this record discloses, the engineer in lowering the skip upon the plaintiff acted without a signal. That the circumstances surrounding the work were such that it was the duty of the master to furnish a signalman to direct the movements of the engineer in operating the derrick and skip, to the end that the place of employment for plaintiff and other workmen there should not be rendered unnecessarily hazardous, cannot be questioned, and that the master failed to discharge this duty is equally apparent, for, though it provided a signalman in the person of Brown in the first instance, the evidence tends to show, and for the purposes of this appeal will be deemed to show that immediately before plaintiff was injured, and at the very time when the services of the signalman were most greatly needed—that is, at the time the loaded skip was hoisted from the point of excavation and started swinging toward the place where plaintiff was at work and toward the point where it was to be lowered and unloaded—the defendant corporation, through its superintendent, Phee, withdrew Brown from his place of duty and sent him to another part of the work to perform other services. So that, so far as this case is concerned, it might with propriety have been charged that the defendant corporation failed to furnish a signalman, and the proof would have sustained the charge. Brown did not signal the engineer, because he was withdrawn by the master just before the signal should have been given, and the evidence, though negative in character, tends to show that a signal was not given by anyone.

Counsel for appellant states in his brief that plaintiff elected to submit the case upon the theory that Brown was present at his post of duty as signalman at the time plaintiff was injured; but the record does not bear out this statement. The allegation of the amended complaint upon which plaintiff elected to rely is that the defendants (Brown and the corporation) "negligently omitted to give proper or any signals."

It is suggested that, if this be the correct interpretation to put upon the evidence, then the negligence which caused the injury was that of the engineer—a fellow-servant of the plaintiff—and there cannot be a recovery. But this suggestion ignores the breach of duty on the part of the corporation in failing to have a signalman present to guide the engineer. The evidence is that, if a proper signal had been given, the accident would not have occurred. And the master in this instance cannot escape the imputation that its negligence, in preventing Brown giving the proper signal, by withdrawing him at the critical moment, combined with the negligence of the engineer to produce the injury to this plaintiff, and under these circumstances the plea that the engineer was plaintiff's fellow-servant [4] is unavailing. If the injury is the result of the negligence of a fellow-servant, combined with the negligence of the master, the defense of fellow-servant's negligence is not available. (*O'Brien* v. *Corra-Rock Island Min. Co.,* 40 Mont. 212, 105 Pac. 724; *Meisner* v. *City of Dillon,* 29 Mont. 116, 74 Pac. 130.) If it be suggested that this construction of the evidence results in a variance between the pleading and proof, it is sufficient answer to say that the variance is not material, under section 6585, Revised Codes, and will not work a reversal, particularly in view of the fact that the variance was not suggested to the trial court at all and is not mentioned in appellants' brief.

That it was a primary duty of the master to furnish a signalman, at the time this plaintiff was injured, is declared by the [5] authorities and is prompted by the dictates of reason and humanity. Four or five hundred men were employed, all busily at work about this derrick. The station of the engineer was

such that he could not see the place of excavation, the place of unloading, and the men as they were at work. Pieces of earth or rock were likely to drop from the skip while it was in this swinging motion from the excavation to the point of unloading, and, unless the skip was kept a sufficient height above the ground, it was likely to strike the workmen. Under these circumstances, the duty of the master to provide a man to direct the engineer's movements was imperative, and its failure to discharge this duty, resulting in injury to a workman, was actionable negligence. (*Aleckson* v. *Erie R. Co.*, 101 App. Div. 395, 91 N. Y. Supp. 1029.)

Appellants' counsel devotes much of his brief to a consideration of the question: Was Brown, as signalman, the *alter ego* of the defendant corporation, or the fellow-servant of the plaintiff? As we view the matter from this record, that inquiry is not of any moment here. The authorities upon the subject are in hopeless conflict, and whether we adopt the view that Brown was the fellow-servant of plaintiff, as expressed in some of the leading cases (see note to *Lafayette Bridge Co.* v. *Olsen,* 108 Fed. 335, 47 C. C. A. 367, as reported in 54 L. R. A., at page 33), or the view that he was performing a nondelegable duty of the master and was for the time a vice-principal, as held in other jurisdictions (*Anderson* v. *Pittsburgh Coal Co.,* 108 Minn. 455, 122 N. W. 794, 26 L. R. A., n. s., 624; *Sroufe* v. *Moran Bros. Co.,* 28 Wash. 381, 92 Am. St. Rep. 847, 68 Pac. 896, 58 L. R. A. 313), would not affect the result in this instance.

B. We think the evidence sufficient to go to the jury, as tending to show negligence of the master in the general plan or method of carrying on the work of moving this skip. The evidence tends to show that instead of having the skip, when filled, hoisted to a reasonably safe height and swung at that distance from the ground to the point of unloading, and then lowered, that the skip was hoisted, and, as the boom turned, the skip was gradually lowered so that, by the time it reached a point over the place of plaintiff's work, it was dangerously near the

ground, and, when the skip was emptied, the boom was started revolving back before the skip was hoisted to a safe distance above the ground; that this practice was known to the master, or in the exercise of ordinary care ought to have been known to it.

It is insisted, however, that the complaint does not predicate plaintiff's injuries upon such negligence; but paragraph 10 of the complaint charges negligence in the general plan or method of carrying on the work, and alleges that such negligence, with other negligent acts, produced the injury of which plaintiff complains. It is true that the allegations are in very general [6] terms; but, in the absence of a special demurrer or motion to make more specific, they are sufficient, and it is elementary [7] that under such circumstances plaintiff need not prove every act of negligence charged, but it is sufficient if he proves any of the acts of negligence pleaded, which proximately caused the injury. (*Frederick* v. *Hale*, 42 Mont. 153, 112 Pac. 70.)

C. The appellant corporation insists that it was not under obligation to warn the plaintiff of the movements of the skip over his place of work, for the reason that the skip was not emptied at that point, but fifteen or twenty feet away, and in the abstract that contention is correct; but since there is evidence in this record tending to prove negligence in the general plan of moving the skip, by which plaintiff's place of employment was rendered extrahazardous—and unnecessarily so—the duty devolved upon the master to change its system of operation or warn plaintiff of the danger. The evidence is sufficient to justify a finding that injury to plaintiff was likely to occur from the negligent method of moving the skip back and forth over his place of work, without keeping it at a reasonably safe height above the ground. If it be suggested that the master [8] should not anticipate that the engineer would drop the skip upon plaintiff, it is answered by saying that it is not necessary that the master should anticipate the particular injury which did result. It is sufficient that it ought to have anticipated that some injury was likely to result as the reasonable and nat-

ural consequences of the absence of a signalman to direct the engineer and the negligent plan of operation (*Mize* v. *Rocky Mt. Bell Tel. Co.,* 38 Mont. 521, 129 Am. St. Rep. 659, 100 Pac. 971), and whether the master ought to have anticipated injury to plaintiff was, under the circumstances of this case, a question for the jury. (*Standard Oil Co.* v. *Brown,* 218 U. S. 78, 30 Sup. Ct. 669, 54 L. Ed. 939; *Jensen* y. *Commodore Min. Co.,* 94 Minn. 53, 101 N. W. 944.)

The evidence discloses that plaintiff had been employed at work some distance from this derrick, and under such circumstances that he could not or did not see the derrick work; that he did not know that the skip would pass over his new place of employment; that the skip which struck him was making its first trip after he was directed to go to the embankment to drill; that he was so situated there that he could not see the skip until it was over him, or nearly so; that he was engrossed in the discharge of the duties assigned him, and did not see the skip approaching; that the master knew of the danger surrounding this new place of employment and had ample opportunity to warn plaintiff after the skip was loaded and started; that it was the custom at this work to warn workmen of approaching dangers; and that the men relied upon receiving warning. In *Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42, this [9] court said: "The principle is that if an employer knows that the servant will be exposed to risks and dangers in any labor to which he assigns him, and is aware that the servant is from any cause disqualified to know, appreciate, and avoid such dangers, the dangers not being obvious, the master is guilty of a breach of duty, unless he gives such reasonable cautions and instructions as should reasonably enable the servant exercising due care to do the work with safety to himself."

The rule is well stated in *Baxter* v. *Roberts,* 44 Cal. 187, 13 Am. Rep. 160, as follows: "Nor is there any doubt that if the employer have knowledge or information showing that the particular employment is from extraneous causes known to him, hazardous or dangerous to a degree beyond that which it fairly

imports or is understood by the employee to be, he is bound to inform the latter of the fact or put him in possession of such information." The principle above has been approved by this court in *Berg* v. *Boston & Mont. C. C. & S. Min. Co.*, 12 Mont. 212, 29 Pac. 545, *Kelley* v. *Cable Co.*, 7 Mont. 70, 14 Pac. 633; and *Stephens* v. *Elliott*, 36 Mont. 92, 92 Pac. 45, and is peculiarly applicable to the facts of this case. The plaintiff went to the work assigned him in a place apparently perfectly safe and rendered unsafe only by reason of other work which the master was carrying on directly about him and of which he had no knowledge. Under such circumstances, the master owed him the duty to inform him of the danger (1 Labatt on Master and Servant, sec. 209; 20 Am. & Eng. Ency. of Law, 2d ed., 97), and its failure to do so constituted negligence.

So far as the defendant corporation is concerned, we think the evidence sufficient to go to the jury, and that the joint motion of the defendants for a nonsuit was properly denied. "No [10] cause should ever be withdrawn from the jury unless the conclusion from the facts necessarily follows, as a matter of law, that no recovery could be had upon any view which could reasonably be drawn from the facts which the evidence tends to establish." (*Cain* v. *Gold Mt. Min. Co.*, above.)

As to the defendant Brown, the judgment and order are reversed, and the cause is remanded to the district court, with directions to enter judgment in his favor for his costs incurred in the trial court, and in this court, not to exceed, however, one-half the costs of preparing and presenting this appeal.

As to the defendant, Stone & Webster Engineering Corporation, the judgment and order are affirmed.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.